UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| Jason Parmeley, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: |
| Titus County Jail et. al., | ) ) ) |
| Defendant(s), | ) ) ) |

MOTION OF JURY TRIAL FOR RELIEF –

DAMAGES UNDER 42 § 1983

INTRODUCTION

This is a civil rights action filed by pro-se litigate, a Federal pre-trial detainee, for damages and injunctive relief under 42 U.S.C § 1983, alleging **Excessive Use of Force** and **Denial of Medical Care** in violation of the Eight Amendment to the United State Constitution and for **Violation of Due Process** and PERA violations. The plaintiff also alleges the **Torts of Assault** and **Battery** and **Negligence**.

JURISDICTION

This Court has jurisdiction over the Plaintiff's claims of violation of Federal constitutional right under 42 U.S.C. § 1331 (1) and 1343.

This Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 42 U.S.C. § 1367.

## DEFENDANTS

(All defendants are being sued in their individual and official capacities and acted under the color of law at all times relevant)

Plaintiff, Jason Parmeley, was incarcerated in Titus County Jail during the event contain within the corners of this complaint.

Defendant 1
Titus County Jail (Entity itself)
304 N. Van Buren
Mount Pleasant, TX  75455

Defendant 2
Tim Ingram (Sherriff)
304 N Van Buren
Mount Pleasant, TX  75455

Defendant 3
John P. Livingston (Chief Deputy)
304 N Van Buren
Mount Pleasant, TX  75455

Defendant 4
Captain Price
304 N Van Buren
Mount Pleasant, TX  75455

Defendant 5
Cody Ortega (Lieutenant)
304 N Van Buren
Mount Pleasant, TX  75455

Defendant 6
Shvannah Best (Corporal)
304 N Van Buren
Mount Pleasant, TX  75455

Defendant 7
Devon Hargrove (Corporal)
304 N Van Buren
Mount Pleasant, TX  75455

Defendant 8
Jane Doe 1(Nurse)
304 N Van Buren
Mount Pleasant, TX  75455

Defendant 9
John Doe 1 (Doctor)
304 N Van Buren
Mount Pleasant, TX  75455

## STATEMENT OF FACTS

On date and times during Plaintiffs incarceration at Titus County Jail, it became known that the new captain had taken a special interest in him. As the plaintiff has had past experiences in where people in new position of authority like to pick out someone to make a name for them self and he was warned about this new captain being "out to get the plaintiff" BY MEMBERS OF HIS OWN STAFF.

1. On or about April 1, 2021, Captain Price stood in front of my cell, I explained to him that I was having issues breathing that my cell was too hot. He replied with a smile on his face that it's not hot at all. As I was dripping sweat and he was on the other side of the door. He walked off.

2. Defendant Best was working and when I woke up from the heat I pushed the button and asked her to check my cells temperature. She REFUSED. As the temperature kept rising and things kept getting hotter, I kept asking for the cell temperature to be cheeked and NO one would check it.

3. During one of their rounds...officer Jane Doe did a check and I asked her to please help me that I felt ill. She observed me in medical emergency and got on the radio to ask Defendant Best to allow her to check the temperature of the cell. Defendant Best came over the radio and said "NO."

4. Officer Jane Doe asked if she could open the food port, that inmate Parmeley is having a hard time breathing. To which Defendant Best said "No, do not open the food port." Observing me, officer Jane Doe decided to go and grab the temperature gage, and then returned to my cell, opened the food port anyway and took three (3) readings of the cell temperature.

5. At 1:30am, Plaintiff's cell temperature was at 85.9 degrees. When Defendant Price was smiling at Plaintiff telling him it's not hot at all...it was midafternoon. I am sure the cell then was in the mid to upper 90's or higher.

6. The Officer Jane Doe who allowed the food port to be opened and allow him to get some breath of air did the right thing. Defendant Best thinks because of her relationship with Ortega that she can retaliate for him against me and no officer is going to step up to her, well she is wrong. There is a witness to the wrong doings.

7. A prisoner must be provided with "shelter which does not" cause his degeneration or threaten his mental and physical well-being.

## PRIVACY ACT
## (5th Amendment)

8. One Court has held in (Valdez v. Farmon, 766 F. Supp. 1529, 1534 (E.D. Cal 1994)) ..." prisoners have the constitutional right to refuse unlawful prison searches."

9. Plaintiff then would have believed that the right to privacy of one's body would require more protections then that of let's say, personal property with the Fourth Amendment.

10. Plaintiff, ever since arriving at Titus County Jail, hereafter known only as (TCJ), did request that female be prevented from doing the 30 min "look in" on male while in the area in the cell. Other option I was subjected to is to allow inmates to cover the window

3

for 5 to 10 minutes that it would take to use the bathroom. All that fell on deaf ears as these people would never listen to a prisoner and they believe we have no rights and Defendant used those same words. As well during the same conversation, he made comments that upset me about George Floyd, and these liberal wack jobs, and how the officers did nothing wrong. I asked that any further conversation I have with Captain Price be recorded and all my movements be on camera.

11. Defendant (TCJ) maintains and uses a policy, practices or custom that allows and requires their female staff members to "look in" or too "look at" male detainees as they are sitting on the toilet during their 30 minute rounds. At the point where the female staff looks in the window where the toilet is in direct line of sight and only 4 or 5 feet away.

12. I have attempted to speak to Defendants Price, Ortega and Best about the situation. I have written their Chief Deputy Livingston that Defendant Price puts so much confidence in, however, never has he or anyone else attempted to resolve the matter.

13. During the conversation I had with Captain Price I explained that prisoners do have rights "A CONSTITUTIONAL RIGHT" that most prisoners believe and free world people do as well, a special sense of privacy in their genitals and involuntary exposure of them in the presence of people of the opposite sex may be especially demeaning and humiliating as well unconditional and a violation of the PERA rights afforded to us by our legislators.

14. Defendant(s) Best over the course of months, has taken different opportunities to make fun of the plaintiff as retaliation for seeking redress from the government. Pointing at the Plaintiff, mocking, laughing and making comments to other detainees. I have taken at least three statements, as well as comments that I should be in the girl's pod after seeing me use the bathroom.

15. The cells have a "state of the art" camera system, the control room sees each and every cell, and however, it was designed in a way that would not violate the privacy rights of the detainees. It does not capture the toilet or shower. So therefore, the purpose of female staff looking in on the detainee serves no legitimate security purpose. The detainees are observed 24 hours in their cell, allowing the 5-10 minutes per day to use the toilet without female staff seems to be an easy matter to address, but instead Plaintiff was retaliated against.

16. As a direct result of Defendants wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and from obtaining full employment in the future and from performing his daily activities. He will suffer sustained loss of earnings and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## DUE PROCESS

17. In or about February of 2021 - Plaintiffs cell was searched by a friend of Cory Coulter, a fellow pre-trial detainee, who recently was caught by another inmate housed in the same unit as the Plaintiff and Coulter - logging into Plaintiffs communication account in hopes to learn information that could be used to help himself get a time cut.

18. This officer can be seen on camera eating pizza with Cory - when he would pull Cory out of his unit late at night time. During that time property would come up missing during searches of his cell. Once Defendant Price told him he threw some things away and placed other items in his property but never did Plaintiff received a property slip or notice of confiscation of items or due process.

19. Defendant Price ordered Defendant Hargrove to conduct a disciplinary hearing for a razor for shaving being found in Plaintiffs cell. (TCJ) staff failed to pick them up once allowing detainees to shave. (TCJ) made a serious charge about it – (when we go look at Bowie County and they give you razor to shave with, for free with your bedroll when you first get there) but (TCJ) cannot grasp the fact the Wolf Protections granted to us by the United State Supreme Court says that detainee should be given a written copy of the charges - written findings of guilt to name a couple things they failed to do on any disciplinary of the Plaintiff. Or that the charge is false and that the officer who says he found the razor blade was just release from the jail after being held there for more than a week after beating up his mom. Or that the officer would do anything to help Coulter. Defendant Hargrove would not listen to any of this. After reporting these matters to Defendant Ortega he was told "you're going to regret picking at us" whatever that meant.

20. Defendant (TCJ) maintains a practice or policy of not providing a system of appealing the fact finder's findings. Once jail officials deprive Plaintiff of his Constitutional Procedural Rights at a disciplinary hearing and the detainee commences to serve the punitive sentence imposed at the conclusion of the hearing, the jail responsible for the due process violation and deprivation must respond in damages, absent of the successful interpretation of a qualified immunity defense of course.

21. Defendant Price and Ortega written and provided to the United State Marshall Service a document that contained a string of false reports against the Plaintiff in an attempt as Defendant Price put it "to fxxx with me back" was sent (report) to influence the sentencing hearing of Plaintiff and to deny him liberty. This as well is Tort - fraud as well as a due process. This can easily be proven because of recording.

## EXCESSIVE FORCE

22. Mental Health Care is subject to the same constitutional standard as other forms of prison medical care: deliberate indifference to a serious mental health need violates the Eight Amendment or as in the Plaintiff's case and other pre-trial detainees, the due process clause.

23. On or about March 29th of 2021, Plaintiff suffered a mental health crisis after a month of being targeted by Defendants Price, Ortega and Best for retaliation for seeking redress from jail conditions. Furthermore, named Defendants used tactics such as threaten to taint the sentencing hearing that was close. They did so on recording of Defendant Ortega as well as he made easily verifiable statements that are clearly lies and submitting reports to the United States Marshall Service with class allegation.

24. More so, on other occasions on body recordings of Defendant Ortega, both Defendants Ortega and Price in conjunction - threatened to call the USMS to find the worst jail in the State of Texas if I did not go along with their program which was not filing anything against them.

25. Plaintiff, at one point, begged Defendant Price to let him be seen by a mental health processional. On three different occasions and through paper requests, verbal as well electronically, never did he see a mental health professional.

26. He suffered a mental break down on many occasions but was unable to control it on March 29, 2021.

27. (TCJ) has a contract with USMS to offer a range of services as it breached that contract and duty of care with Plaintiff.

28. (TCJ) should have had a policy and practice of a systematic program for screening and evaluating inmates such as Plaintiff, who are in need of mental health care.

29. Even Plaintiff self-reported to Defendants Price and Ortega. The fact they obtained no records concerning Plaintiff mental health from the BOP - if they did they would have seen a reported psychiatric history and that combined with the bizarre behavior as reported should have been enough to get him treatment. They failed too.

30. On March 29, 2021, Plaintiff did have a mental health break down. Instead on helping the Plaintiff, they used it as an opportunity to retaliate. They rushed into his room and the Plaintiff curled into a ball under the blanket as Defendant Ortega sprayed the Plaintiff with Oleoresin Capsicum (OC).

31. Other officers present related some of the events that the Plaintiff does not recall. One thing that sticks out that Defendant Ortega did not wait for a responds from the verbal commands to cuff up before being spayed, he just ran through the warning required and

did not give the Plaintiff the chance to respond before he sprayed him because he wanted to inflict pain on him.

32. Courts have ruled that tear gas is not to be used in "locked in cell" situation unless there is an immediate danger to life or serious harm.

33. Plaintiff did try to prevent himself from being assaulted by Defendant Price as well as Ortega when he used the white extension cord that Defendant Ortega gave him through transport officer and old captain of the jail, Mr. Garcia. Not a cord to my equipment. The self-serving statement to make it appear they mace the Plaintiff because they believe he was going to harm himself should be seen for what it is, a self-serving lie. The video will show nothing like what their reports say.

34. In fact, the Plaintiff was in a panic and in fear of being harmed. Only was he calling out for help to make the fear stop. He was in a crisis and needed help. The video never shows him make one threat to harm anyone that day nor is there a recording of Corporal Best taking my vital signs and me making a threat. Never did the Plaintiff make any threat. The video on March 29, 2021 show Plaintiff running and hiding in the corner being sprayed.

35. Courts have ruled (...holding policy of using chemical agents against prisoners with mental health issues behaving disruptively because of their mental health illness was\is unconstitutional.

36. (TCJ) fails to obtain the correct, complete mental health file and should not rely on self-reporting when it comes to mental health.

37. Furthermore, the Court held that (CS) gas and any pepper spray should be able to wash off the detainee body promptly. Plaintiff was put in a shower area for 10 minutes is true. What is left out of the report is the scalding hot water that prevented the use of the shower and that was the entire defendant was offered. Short time later, he asked Defendant Best to allow him in the shower and she would not allow him to.

## DENIAL OF MEDICAL CARE

Since prisoners cannot obtain their own medical services, the constitution requires prison authorities to provide them with "reasonable adequate medical care." The court has defined "adequate" medical services as "services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudence professional standard, and as "a level of health services reasonably designed to meet routine and emergency medical, dental and psychological or psychiatric care.

38. In or about February 2021, Plaintiff slipped coming out of the shower on a patch of black mold on the floor outside of the shower in his cell. Almost every cell is covered in mold especially the oldest part of the jail. Plaintiff brought this to the attention of the staff many months prior through the electronic messaging system.

39. He reported the fall and the injured foot as well as his need to seek medical care. At first, the nurse in conjunction with Capt. Price stated that there was nothing wrong with the foot and brushed it off. The Plaintiff however, urged them to reconsider letting him see the doctor and get an x-ray.

40. It would be determined at some point later that the foot was broken. During the same time a new captain had taken over the jail and shown a very odd, inappropriate and infatuation with the Plaintiff.

41. At which point in time, things between Captain Price and Plaintiffs relationship had taken a turn for the worse which included separating him from other inmates and refusing to allow him to have other inmates so that defendant Price could keep him isolated without any other inmate witness to conversations, interactions and ultimately the Plaintiff being assaulted. (Details in excessive force)

42. The Plaintiff never received orthopedic or medical care. Which includes, pain meds, boots, wraps. He sat in pain for over a month while Defendant Price, "Oh yeah, we have you and appointment, just wait."

43. Named defendants, especially Lt. Ortega and Captain Price, when Plaintiff inquired about that appointment as well as another appointment they told him they were waiting on (which is follow up care to a neurosurgeon at the pain clinic due to a neck injury ) They stated "we have your appointment made you'll be seeing him." However, there was a coordinated, systematic delay due to the defendants dislike to the Plaintiff.

44. Plaintiff recently suffered a mental health crisis (detailed in the complaint) however, two months prior to the mental health crisis he requested to see a mental health professional. He requested this electronically and verbally, begged them.

45. The request was never answered and he never saw a mental health professional even though the Plaintiff followed up with Defendant Price stated "Sure we'll get you in buddy."

46. Named defendants, including defendant Price created a systematic and regular delay of mental health medical care resulting in physical and mental injury that possibly is irreparable. He delayed this care due to the fact that Captain Price was trying to transfer the Plaintiff out of this jail so as not to have to further delay the care.

47. Transferring a prisoner in need of urgent care to a facility that the officials KNEW would not possess his full medical records would certainly delay the urgent care of the Plaintiffs medical need.

8

48. On April 3, 2021, Plaintiff was transported to orthopedic surgeon, two months after the broken bone, in which the orthopedic surgeon said at this point "the bone has healed and there is nothing that can be done." If the Plaintiff would have seen the orthopedic surgeon within the time frame of the National Standard of Care for a broken bone then the Plaintiff would have received the proper care. Instead he was transported three different times.

## REQUESTED RELIEF

WHEREFORE, the Plaintiff requests that the Court GRANT the following Relief:

I. Declaratory Judgment Stating:
   A. Defendants deliberate act of denial of medical care violated the Plaintiff's Constitutional Rights
   B. Defendants deliberately violated state law of [retaliation] [Intentional infliction of emotional distress] [failure to protect] failure to train] [negligence of supervision] [medical negligence ] [medical malpractices]

II. For plaintiff to be seen by a medical specialist for his foot

III. Award compensatory damages in the amounts of:
   A. $300,000.00 jointly and severely against (TCJ)
   B. $300,000.00 jointly and severely against the remaining Defendants

IV. Court to award damages and relief as it sees fit.

Pursuant to U.S.C. SEC 1746, I declare under the penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Jason Parmeley
May 1, 2021